IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00105-CYC

CAYO, INC. d/b/a Huklberry,

    Plaintiff,

v.

IPTIQ AMERICAS, INC.,

    Defendant.

---

## ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Defendant iptiQ Americas, Inc. ("iptiQ") moves for summary judgment on plaintiff Cayo, Inc. d/b/a Hucklberry's ("Cayo") claim for unjust enrichment — the plaintiff's sole remaining claim. Because the plaintiff's claim merely relies on suspicion and speculation, the motion for summary judgment, ECF No. 51, is granted.

## LEGAL STANDARDS

    A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation marks omitted). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## UNDISPUTED FACTS

The plaintiff's response to the defendant's summary of undisputed material facts is riddled with non-responsive responses. The Federal Rules of Civil Procedure require a party "asserting that a fact . . . is genuinely disputed" to "support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). This Court's Practice Standards further require particular denials or admissions of a movant's proposed set of undisputed facts by a party opposing summary judgment with specific citations to evidence in the record which establishes that the fact is in dispute. D.C.COLO.MJ V.10. At various points, however, the

plaintiff purports to dispute a fact but does not actually respond to the asserted fact. When the plaintiff does so, the fact is deemed undisputed.

The following facts are undisputed and identified by reference to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and are viewed in the light most favorable to the non-moving party.

The defendant is an entity formed to sell insurance products online through distributors. ECF No. 52-1 at 2–4. The defendant, however, does not market insurance products, leaving that to the distributors. *Id.* at 5. Instead, the defendant's role was to build an end-to-end platform which enabled consumers to apply and purchase life insurance without interacting with a representative (the "Platform"). *Id.* at 3. The defendant acquired Lumico Life Insurance Company ("Lumico"), which was able to underwrite and issue policies purchased through the Platform. *Id.* at 4.

Lumico, which entered into agreements with various distributors, entered into an agreement with Crump Life Insurance Services, Inc. ("Crump") that provided Crump with the ability to use sub-producers to sell Lumico's products. *Id.* at 4–5; ECF No. 51-4 at 5–6. The sub-producer agreement would be valid for one year, unless terminated earlier in accordance with the agreement. *Id.* at 5. Crump then entered into an agreement with the plaintiff. ECF No. 51-5. Based on that agreement, the plaintiff would use its "best efforts to place the sale of insurance products through Crump." *Id.* at 3. Crump, however, maintained its right to terminate the agreement. *Id.* at 5. Upon Crump and the plaintiff entering into this agreement, the plaintiff became a marketer of Lumico. ECF No. 51-7 at 85:19-23. The plaintiff, however, did not enter into an agreement with either Lumico or the defendant. *Id.* at 87:6-16.

To generate leads — that is, recipients of email marketing, ECF No. 51-7 at 15:13–21; ECF No. 51-6 at 72:24–73:11 — the plaintiff retained a third-party company that used online advertising and email campaigns. ECF No. 51-7 at 15:13–23; ECF No. 60-3 ¶ 14–15. From there, those leads would be directed to the plaintiff's webpage, where the consumer would be asked questions designed to filter out unqualified applicants. ECF No. 51-12; ECF No. 51-6 at 64:10–21, 76:8–25, 98:12–14. This initial page is the plaintiff's "front-end." ECF No. 51-11 at 104:13–19; ECF No. 51-3 at 7–15. Once consumers answered these questions, they would then be sent to the Platform to complete an application. ECF No. 51-11 at 65:11–25, 104:13–19.

In 2019, Swiss Reinsurance America Corporation sent the plaintiff a letter indicating that Crump and Lumico had terminated the agreement between the plaintiff and Crump, ECF No. 52-5 at 3. Following this termination, the plaintiff filed for bankruptcy, ECF No. 51-14, and its business status in Nevada has since been "revoked." ECF No. 51-15.

The plaintiff then commenced this action. The original complaint asserted six claims against three defendants. ECF No. 6 ¶¶ 44–83. The parties consented to the jurisdiction of a magistrate judge, ECF No. 20, and then-Chief Magistrate Judge Michael E. Hegarty dismissed the claims of the original complaint, *Cayo, Inc. v. Swiss Reins. Am. Corp.*, No. 23-cv-00105-MEH, 2023 WL 4744196, at *17 (D. Colo. May 2, 2023). The plaintiff amended the complaint, reasserting four claims against the three defendants, ECF No. 28, but Judge Hegarty dismissed all of the reasserted claims except a claim for unjust enrichment against the defendant. *Cayo, Inc. v. Swiss Reins. Am. Corp.*, No. 23-cv-00105-MEH, 2023 WL 11831916, at *14 (D. Colo. Dec. 19, 2023). The defendant then answered the Amended Complaint. ECF No. 38. This motion followed, ECF No. 51, and the case was reassigned to the undersigned following Judge Hegarty's retirement, ECF No. 58.

## ANALYSIS

The defendant moves for summary judgment on the one remaining claim. As an initial matter, the defendant challenges the plaintiff's capacity to sue. But "[t]o raise" this "issue[], a party must do so by a specific denial," Fed. R. Civ. P. 9(a)(2), that is, "capacity to sue must be raised in a specific denial in an appropriate pleading or amendment." *RK Co. v. See*, 622 F.3d 846, 849 n.2 (7th Cir. 2010). Here, the defendant did not assert capacity to sue in its Answer. ECF No. 38 at 16. It therefore "has waived the argument that [the plaintiff] lacked the capacity to sue because [it] failed to raise it in [its] pleadings." *RK Co.*, 622 F.3d at 849 n.2.

The defendant's argument on the merits of the unjust-enrichment claim fares better. "The claim of unjust enrichment is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000)), *as modified on denial of reh'g* (Aug. 18, 2008). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Id.* A benefit "may be anything that adds to another's security or advantage." *Indian Mountain Corp. v. Indian Mountain Metro. Dist.*, 412 P.3d 881, 888 (Colo. App. 2016) (citing *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 (Colo. 1982)). Here, there is no evidence that the defendant received a benefit at the plaintiff's expense.

The plaintiff's theory of benefit is that after working with it, the defendant unjustly benefitted by gaining a new ability to integrate its products with other insurance distributors, derived from that collaboration, that enabled it to generate more business. But the defendant adduces evidence asserting that its offerings do not involve "any marketing, front end, or any

5

other aspect of the work performed by Cayo." ECF No. 51-2 ¶ 20. To dispute this, the plaintiff points to a 2019 email thread involving the defendant's employees referring to a "hand off API." ECF No. 61-2 at 17. But it provides no evidence to support its response's assertion, RSUMF ¶ 51,[1] that the "hand off API" to which the email thread refers is actually derived from work the plaintiff performed. The emails themselves say nothing of the sort, *see* ECF 61-2, and while they refer to certain "fields," *id.* at 14–15, and technical schema, *id.* at 9, the plaintiff submits nothing showing that these are indicative of its handiwork. To be sure, the plaintiff submits a declaration averring that the defendant "did not have a working software application or API that could be quickly adapted to integrate with Cayo's front end," ECF No. 60-3 ¶ 16, but simply because interfacing with the plaintiff's front end took technical effort in 2017 does not, without more, mean that a different project two years later reflects a benefit bestowed by that technical effort.

      Without direct evidence of the defendant's post-2019 use of the plaintiff's work, the plaintiff attempts to point to other circumstances indicating such use. It begins, for instance, with a website that it says shows the defendant entering strategic partnerships with other insurance companies and touting its new ability to offer an end-to-end insurance platform following the fallout between the parties. ECF No. 60-4; RSUMF ¶¶ 50, 80.

      The defendant objects to the authenticity and admissibility of the website, and it is doubtful that the Court can properly consider it to deny summary judgment. After all, the plaintiff attempts to use it to prove the truth of the matter it asserts.[2] *See* Fed. R. Evid. 801(c)(2);

---

[1] SUMF refers to the Statement of Undisputed Material Facts, ECF No. 51 at 6; RSUMF to the Response to Statement of Material Facts, ECF No. 60 at 3; and RRSUMF to the Reply to Response to Statement of Undisputed Material Facts, ECF No. 64 at 2.

[2] To be sure, a statement of a party-opponent is not hearsay, Fed. R. Evid. 801(d)(2), but the defendant says that the website belongs to iptiQ EMEA, a European company, not it. Although the Court does not weigh evidence on a summary-judgment motion, the printout does note that "iptiQ was created in 2014," whereas the parties agree that the defendant was not created until

6

*Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209 (10th Cir. 2010) ("'[I]t is well settled in this circuit that [a court] can consider only admissible evidence.'" (quoting *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998))). And there is nothing authenticating the website's printout. *See Southco, Inc.*, 982 F. Supp. 2d at 515 ("[E]ven website evidence admissible under a hearsay exception requires authentication."). But even if it were properly considered, the website itself never says that the capabilities it advertises are newfound or derived from the defendant's work with the plaintiff. *See* ECF No. 60-4. Nor does any other evidence give further context to the website. Indeed, the sole declaration the plaintiff submits makes no mention of the printout. *See* ECF No. 60-3. As such, the plaintiff gives no evidence that what the website markets relies on the plaintiff's work product.

The plaintiff also asserts that prior to the defendant working with it, the defendant had no partnerships with any insurance distributor that provided instant-issue life insurance products. ECF No. 60 at 15. And it claims that, if the defendant had its own integration software, then it "should have been able to quickly onboard [the plaintiff's] front-end lead generation platform." ECF No. 60 at 18. But again, neither hypothesis is grounded in evidence. *See id.* (citing nothing). Unsupported argument, suspicion, and speculation are not enough to survive the summary judgment stage. *See Palmer v. U.S. Postal Serv.*, 69 F. App'x 419, 421 (10th Cir. 2003) ("[T]hese conclusory allegations are not supported by evidence and are, therefore, insufficient to resist summary judgment." (citing *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir.1996))). These musings, then, do not suffice.

---

2016. *Compare* ECF 60-4 at 2, *with* SUMF ¶ 5 and RSUMF ¶ 5; *see also* ECF No. 64-1 ¶¶ 4–6. It also notes that the CEO of the website's "iptiQ" is "Robert Burr" in Zurich, Switzerland, ECF No. 60-4 at 4, whereas the defendant's CEO is Niels Keuker. ECF No. 52-1 ¶ 1.

The short of it is that the plaintiff "must come forward with evidence to establish [that the] Defendant[] received things of value that would be inequitable to retain without payment." *RV Horizons, Inc. v. Smith*, No. 18-CV-02780-NYW, 2020 WL 6701119, at *31 (D. Colo. Nov. 13, 2020). It did not. Instead, it provided an advertising website and an email thread, neither of which actually show that the defendant used anything from the plaintiff following the termination of its contract with the plaintiff. That alone dooms its unjust enrichment claim, and the Court need not address the defendant's final argument that the plaintiff cannot show any improper gain by the defendant. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2021 WL 4291015, at *12 (D. Colo. Sept. 20, 2021).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the defendant's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

The Clerk of Court shall enter judgment in favor of the defendant and against the plaintiff and close this case.

DATED this 26th day of September, 2025, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

8